# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MARK ANTHONY MCWHORTER, | : | Case No. 3:16-cv-00230 |
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| NANCY A. BERRYHILL, | : | |
| Commissioner of the Social | : | |
| Security Administration, | : | |
| Defendant. | : | |

## DECISION AND ORDER

Plaintiff Mark Anthony McWhorter has many cardiovascular problems including, in part, coronary artery disease, sinus tachycardia, cardiomyopathy, congestive heart failure, moderate left ventricular hypertrophy, and chronic obstructive pulmonary disease. He possibly had an inferior wall infarct (tissue necrosis[1]). And he has many other problems: obesity, diabetes, asthma, depression, anxiety, panic disorder, and borderline intellectual functioning. If all this was not daunting enough, he once suffered a gunshot wound to his right leg.

Plaintiff sought assistance from the Social Security Administration by applying for Disability Insurance Benefits and Supplemental Security Income. He asserted that he had been under a benefits-qualifying disability starting on December 31, 2009, when he was

---

[1] *See* Taber's Cyclopedic Medical Dictionary, p. 1043 (19th ed. 2001).

32 years old.  Administrative Law Judge (ALJ) Emily Ruth Statum concluded that Plaintiff was not under a disability and denied his applications.

Plaintiff brings the present case challenging ALJ Statum's decision.  He contends that she failed to properly evaluate his credibility, posed inaccurate hypothetical questions to the vocational expert, and improperly relied on the vocational expert's testimony.

During a hearing held by ALJ Statum, Plaintiff testified that he had last worked 3 years before the hearing.  The work consisted of factory-type jobs that required him to move heavy objects and work on assembly lines.  (Doc. #7, *PageID* #61).  He explained that he can no longer work due to breathing problems, congestive heart failure, diabetes and chronic leg pain caused by a gunshot wound and a motorcycle accident.  *Id.*  He's had right-leg pain ever since he was shot.  After his motorcycle accident, his right-leg pain became intolerable.  *Id*. at 62.  He takes pain medication—Percoset (4 times daily) and Gabapentin (2 times daily).  *Id.*  His medication side effects include feeling tired "all the time" and not being able to pay attention.  *Id.*

Plaintiff no longer has a driver's license due to physician-imposed restrictions.  He's had fits of coughing that "literally caused [him] to pass out." *Id*. at 62-63.

The ALJ observed Plaintiff had an oxygen tank with him at the hearing.  Plaintiff testified that he always uses the oxygen tank due to his chronic obstructive pulmonary disease and congestive heart failure.  *Id.* at 63.  He explained that he experiences constant chest pain and tightness.  *Id.*  If he needs to bend over to pick up something, he gets short of breath.  He cannot play with his daughter.  He cannot walk 3 blocks without stopping

to catch his breath. If he manages to walk 3 blocks to his neighbor's house without stopping, he needs to sit for 5 or 10 minutes when he gets there in order to catch his breath. *Id*. When he lies down he gets a sharp, stabbing pain in his leg that is constant and makes his legs jump and cramp up. *Id.* at 67-68. He also has leg swelling, and he can only be on his feet for 5 or 10 minutes at a time. He elevates his legs when his feet are swollen. *Id.* at 72.

Plaintiff testified that he is always tired because he does not sleep well at night because of pain. He naps 3 or 4 times during the day. When he takes a pain pill it knocks him out for 30 minutes. He also gets tired from "moving about" and "just even talking." *Id.* at 68. He is short of breath and is "always fighting for air." *Id.* He uses an inhaler 2 times a day for breathing treatments. *Id.* at 71.

During a typical day, Plaintiff wakes his daughter up for school, and he tries to "pick up here and there." *Id*. at 64. His wife does all the household chores and his older son cuts the grass. *Id*. He watches about an hour of television in the morning and tries to read. *Id.* He has trouble helping his daughter with her homework. She is in fourth grade. *Id.* at 64-65. He used to be able to cook and used to enjoy cooking. But, he can no longer stand long enough to prepare a meal without his legs swelling. *Id*. at 66.

During the ALJ's hearing, she asked a vocational expert a series of questions concerning the numbers of jobs available to a hypothetical person with certain work limitations. The vocational expert testified that, considering a hypothetical person with the limitations the ALJ described, plus the need to elevate his legs to waist or chest level during the workday, there would not be any jobs available to him. *Id*. at 78, 84. The

3

vocational expert further testified that if the limitations the ALJ described included the additional limit of being off task more than 5 percent of the workday, there would be no jobs available for such a hypothetical person. *Id*. at 84. And, a person needing to use an oxygen tank would not be employable. *Id*. at 76.

* * *

The Social Security Act defines a "disability" as physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See* 42 U.S.C. §§ 423(a), (d), 1382c(a); *see also Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). ALJ Statum concluded that Plaintiff's medically determinable impairments fell outside this definition by conducting the 5-Step evaluation required by social security law. *See* 20 C.F.R. § 404.1520(a)(4). Her more significant findings began at Step 2 where she found that Plaintiff had many severe impairments: coronary artery disease; diabetes mellitus; history of gunshot wound to right leg; asthma; obesity with a Body Mass Index of 32.59; sinus tachycardia; congestive heart failure; chronic obstructive pulmonary disease; moderate left ventricular hypertrophy; status post possible inferior wall infarct; cardiomyopathy; depression; anxiety; panic disorder; alcohol-related disorder, NOS; and borderline intellectual functioning. (Doc. #7, *PageID* #40). At Step 3, the ALJ concluded that Plaintiff's impairments did not automatically constitute a disability. *Id*. at 42-43.

At Step 4, the ALJ assessed Plaintiff's residual functional capacity or the most he could do despite his impairments. *See* 20 C.F.R. § 404.1545(a); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). Doing so, the ALJ found that Plaintiff could perform sedentary work with the following limitations: "(1) lift and/or carry ten pounds occasionally; (2) sit about six hours in an eight-hour workday; (3) stand and/or walk about two hours in an eight-hour workday; (4) with no limitations pushing and/or pulling; (5) he can climb stairs or ramps frequently; (6) occasionally climb ladders, ropes or scaffolds; (7) he should avoid concentrated exposure to the extremes of heat or cold, or humidity; (8) no concentrated exposure to flumes, odors, dust, gases, environmental pollutants, or poor ventilation; (9) unskilled work that requires performing routine, one to three-step tasks of repetitive nature, in a work setting with no demand for fast production speed; and (10) no more than occasional contact with co-workers and the public." (Doc. #7, *PageID* #43). These work limitations precluded Plaintiff from performing his past relevant work. *Id*. at 46.

At Step 5, the ALJ concluded that Plaintiff was not under a disability because a significant numbers of jobs exist in the national economy that he can perform, including charge-account clerk and weight tester. *Id*. at 47. This conclusion led to ALJ Statum's ultimate finding that Plaintiff was not under a benefits-qualifying disability. *Id.* at 46-47.

The present judicial review determines whether ALJ Statum applied the correct legal standards and whether substantial evidence supports her findings. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). If she failed to apply the correct legal

5

criteria, her decision may be fatally flawed even if the record contains substantial evidence supporting her findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004). A conclusion is supported by substantial evidence when "a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance...." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Plaintiff challenges ALJ Statum's finding that "the medical evidence does not support the need for oxygen therapy." (Doc. #7, *PageID* #45). He contends that the record repeatedly notes that he has been using supplementary oxygen therapy. His treating pulmonologist, he points out, completed a report that unequivocally states he is "on home O2." (Doc. #8, *PageID* #1469 (citing *PageID* #1335 "and the record generally")).[2] Plaintiff argues that the record is devoid of any medical evidence contradicting his treating pulmonologist's report and, consequently, "ALJ Statum's statement that 'the medical evidence does not support the need for oxygen therapy,' [*PageID* #45] is simply incorrect." (Doc. #8, *PageID* #1470).

"There is no question that subjective complaints of a claimant can support a claim for disability, if there is also objective medical evidence of an underlying medical

---

[2] Plaintiff cites to the page number used by the Social Security Administration at the administrative level (here, page number 1300) rather than to the PAGEID #s used in this case (page 1300 is *PageID* #1335). *See* General Order No. Day 12-01, Pretrial and Trial Procedures, p.12 (S.D. Ohio, Feb. 2, 2012) ("Page references should be to the page identification number (PageID __) which is added electronically to each page of a document filed with the Court.")

6

condition in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). ALJs, however, are not required to accept as credible a claimant's subjective reports of pain and other symptoms and "may properly consider the credibility of the claimant." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citation omitted); *see Jones*, 336 F.3d at 476. An ALJ's credibility findings "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531 (citations omitted).

Contrary to Plaintiff's argument, the ALJ properly considered and discounted his testimony about his need for oxygen therapy. Doing so, the ALJ set forth the correct legal criteria to assessing a claimant's credibility. *See* Doc. #7, *PageID* #44. And, substantial evidence supports the ALJ's conclusion that the medical evidence did not confirm the need for oxygen therapy. Medical notes from both Salim Dahdah, M.D. (Plaintiff's cardiologist) and Shahid Bashir, M.D. (Plaintiff's pulmonologist) showed Plaintiff's blood oxygen saturation levels were 94% or higher, on room air, as the ALJ observed. *Id*. at 45, 774, 777, 1371. The ALJ also correctly noted that Plaintiff's six-minute-walk test in February 2013 showed that his his blood oxygen levels did not desaturate with exercise—his saturation level was 97% at the conclusion of the test. *Id*. at 45, 1434-36. Based on such evidence, the ALJ reasonably discounted Plaintiff's testimony about his need to use oxygen.

The evidence Plaintiff relies on does not contradict the ALJ's findings or the evidence on which the ALJ relies. Plaintiff's evidence, moreover, does not reasonably corroborate his testimony that he always uses oxygen at home. At best, his evidence establishes that he was treated with oxygen therapy during his time in the hospital on several occasions. Such treatment is not reasonably probative of whether he needed to always use oxygen at home or whether he would need it to be capable of performing a limited range of sedentary work. Examination of the specific evidence Plaintiff relies on reveals its shortcomings. In May 2012, at the emergency room, Plaintiff was frequently noted to have even and unlabored breathing. *Id*. at 455. He was on oxygen briefly (a few minutes) while he obtained his chest x-ray, which showed that his lungs were hypoinflated and clear. *Id*. at 455, 459. He was admitted to the hospital, and his pulse oximetry was 96%. *Id*. at 776-77. Normal pulse oximetry ranges from 95 to 100%; values under 90% are considered low.[3]

On December 16, 2012, Plaintiff went to the hospital where he was placed on 2 liters of oxygen. *Id*. at 581. The doctor diagnosed pneumonia and admitted him to the hospital for 4 days. *Id*. at 583. While his pneumonia was being treated, the plan was to provide supplemental oxygen to keep his saturation levels above 92%. *Id*. at 589. There does not appear to be any indication in these records that Plaintiff's oxygen saturation was, or fell below, 92%. Though Plaintiff had moderate shortness of breath on examination, his saturation level was 94% without supplemental oxygen. *Id*. at 593. Following treatment with IV antibiotics and steroids, Plaintiff improved and was

---

[3] *See* http://www.mayoclinic.org/symptoms/hypoxemia/basics/definition/sym-20050930.

discharged home in good condition. The doctor prescribed inhalers and medication but not home oxygen. *Id*. at 583-84. Indeed, discharge notes do not mention that he required oxygen therapy at home. *Id*. at 583-84.

Plaintiff correctly refers to the fact that Dr. Bashir noted that he was "on home $O^2$." *Id*. at 1335. But, Dr. Bashir did not indicate that Plaintiff needed to always use home oxygen therapy or that he needed oxygen therapy in order to perform sedentary or other work. Dr. Bahshir's note, moreover, is not inconsistent with the respiratory limitations the ALJ included in her assessment of Plaintiff's residual functional capacity—for instance, "no concentrated exposure to flumes, odors, dust, gases, environmental pollutants, or poor ventilation," *id*. at 43— and reasonably accounted for Plaintiff's credible limitations. This is further seen in the ALJ's decision to limit him to sedentary work, which is the lowest exertional level recognized under social security law. 20 C.F.R. § 404.1567(a). The ALJ also properly added postural restrictions to further address the impacts of Plaintiff's cardiovascular problems on his work abilities.

Plaintiff next contends that the vocational expert indicated that use of supplemental oxygen has a significant impact on all available jobs. This occurred, in Plaintiff's view, when the vocational expert testified that no light exertional jobs would be available to a person who needed to use supplemental oxygen. Plaintiff maintains that the ALJ erred by not considering this clearly supported limitation in her remaining hypotheticals to the vocational expert and, consequently, improperly relied on the vocational expert's testimony.

While Plaintiff accurately recounts the vocational expert's testimony, his argument is grounded on the premise that he needs oxygen therapy on a continuous or nearly continuous basis. Because the ALJ did not err in discounting Plaintiff's credibility concerning his need for oxygen therapy, she likewise did not err in her formulation of the hypothetical questions she posed to the vocational expert. "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993).

In sum, the ALJ applied the correct legal criteria to his evaluation of Plaintiff's credibility and substantial evidence supports the ALJ's credibility findings. The ALJ's credibility findings are therefore due great weight and deference. *Walters*, 127 F.3d at 531. Further, and as a result, Plaintiff has not shown that the ALJ's hypothetical questions lacked any credible limitation. The ALJ therefore did not err in relying on the vocational expert's testimony.

Accordingly, Plaintiff's Statement of Errors lacks merit.

**IT IS THEREFORE ORDERED THAT:**

1. The ALJ's determination that Plaintiff is not under a disability, and the resulting denials of his applications for Disability Insurance Benefits and Supplemental Security Income, are affirmed; and

2. The case is terminated on the docket of this Court.

September 27, 2017            *s/Sharon L. Ovington*
                                                     Sharon L. Ovington
                                                     United States Magistrate Judge